UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  2026-CR-80016-SINGHAL/MAYNARD

UNITED STATES OF AMERICA

      Plaintiff,

vs.

JUSTICE ORLANDO,

      Defendant.

_____/

## SENTENCING MEMORANDUM

On May 6, 2026, the Defendant, ORLANDO JUSTICE, entered a plea of guilty to Count 6 of a Fourteen-count Indictment charging him with Making a False Statement to Firearms Dealer pursuant to 18 U.S.C. §922(a)(6)1.

This memorandum is being filed pursuant to Rule 32 of the Federal Rules of Criminal Procedure.

## PERSONAL BACKGROUND

Justice Orlando was born and raised in West Palm Beach, Florida. Although his parents, Jennifer Calvoni and Nicholas Orlando never married, he has had their support and backing throughout his young life.   Mr. Orlando also has staunch

---

1 Mr. Justice was named in counts 2 and 7-14.

support from his stepfather, Nicholas Calvoni, his sister, Olivia and brother, Michael, both of whom are younger than him but share a strong and loving sibling bond.

Mr. Orlando currently lives with his girlfriend, Edaesia Goetz, in Sebring, starting a life together.  Despite their ages, he is 20 and she is 19, they share expenses, a vehicle, and a belief in their future. They both want to continue their educational pursuits as they navigate their way through this situation.

Mr. Orlando expressed a desire to join the United States Air Force and become a specialist in Cybersecurity.  Understanding that this may not be an option, he became a young entrepreneur starting his own web design and development business, SiteSmith LLC.  Mr. Orlando enjoys working with computers and will eventually achieve his Cybersecurity goal.

Mr. Orlando is not a selfish person and understands the toll this situation has taken on his family.  By fully accepting responsibility, he is ready to move forward with his life.

<u>**MEMORANDUM OF LAW**</u>

The Defendant is asking this Court to fashion a reasonable sentence and would ask that those matters in Title 18, United States Code, § 3553(a), be considered.  Title 18, United States Code, § 3553(a) provides, in relevant part:

Factors to be considered in imposing this sentence – the Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection.  The court, in determining the particular sentence to be imposed, shall consider-

(1)     the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)     the need for the sentence imposed:

(A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)     to afford adequate deterrence to criminal conduct;

(C)     to protect the public from further crimes of the defendant; and

(D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)     the kinds of sentences available;

(4)     the kinds of sentence and sentencing range established …;

(5)     any pertinent [Sentencing Commission] policy statement …;

(6)     the need to avoid unwarranted sentence disparities among the defendants with similar records who have been found guilty of similar conduct; and

(7)     the need to provide restitution to any victims of the offense.

**REQUEST FOR VARIANCE FROM ADVISORY GUIDELINE RANGE PURSUANT TO TITLE 18, UNITED STATES CODE § 3553, AND BOOKER VS. UNITED STATES, 543 U.S. 220 (2005)**

The Defendant would respectfully submit that a variance from the applicable advisory Guideline Range is appropriate in this case. In the Sentencing Reform Act of 1984, Congress set forth a number of factors to be considered by Courts in determining an appropriate sentence. One such factor was the guideline sentence.

In *U.S. v. Booker*, 125 S.Ct. 738 (2005), the position of the Sentencing Reform Act that required sentencing courts to follow the guidelines changed to an "Advisory" regime under which the Guidelines should still be considered by Courts, but do not automatically control the ultimate sentencing determination. As Justice Breyer observed, this new discretionary regime "requires a sentencing court to consider Guideline ranges, s*ee* §3553(a)(4) (Supp. 2004), but permits the Court to tailor a sentence in light of other statutory concerns as well. *See* §3553(a) (Supp. 2004) and *Booker at* 757. The result was the Supreme Court authorizing sentences to fall outside the Advisory Guideline range, so long as such a sentence was reasonable. "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." *Koon v. U.S.* 518 U.S. 81, 113 (1996).

"Although the sentencing judge is obliged to consider all of the sentencing factors outlined in section 3553(a), the judge is not prohibited from including in

that consideration the judge's own sense of what is a fair and just sentence under all the circumstances.  That is the historic role of sentencing judges, and it may continue to be exercised, subject to the reviewing court's ultimate authority to reject any sentence that exceeds the bounds of reasonableness." *U.S. v. Jones,* 460 F.3d 191 (2nd Cir. 2006).

## THE NATURE AND CIRCUMSTANCES OF THE OFFENSE AND THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT, 18 U.S.C. § 3553(a)(1)

The Sentencing Reform Act instructs the Court to consider the "nature and characteristics of the offense."  18 U.S.C. § 3553(a)(1).  The Court should look past the four corners of the offense conduct portion of the Pre-Sentence Investigation report to define the real conduct which Mr. Orlando has pleaded guilty, accepted full responsibility for, and has been convicted.  In *U.S. vs. Booker*, 125 S. Ct. at 759, it was noted that "The Federal sentencing system depends for its success upon judicial efforts to determine, and to base punishment upon, the real conduct that underlies the crime of conviction."

The Sentencing Reform Act also instructs the Courts to consider the "history and characteristics of the defendant."  Apart from consideration of criminal history, the mandatory Guidelines gave Courts little room to satisfy this statutory mandate, and almost no room to consider the positive traits of an accused.  In rendering the

5

Guidelines advisory, *Booker, supra*, properly restored the Court's discretion to consider the whole person and that person's background and history when meting out punishment. *See, generally, U.S. vs. Ramum*, 353 F. Supp. 2d 986, ("In cases in which the defendant's history and character are positive, consideration of all the §3553(a) factors might call for a sentence outside the Guideline range.

The defendant has accepted full responsibility for his actions that bring him before this Honorable Court. He blames only himself and understands that this was a path of his choosing and that every choice has consequences.

### **THE NEED FOR THE SENTENCE IMPOSED, 18 U.S.C. § 3553(a)(2)**

The Defendant is cognizant of the fact that the Court must fashion a sentence that reflects the seriousness of the offense, promotes respect for the law, and provides just punishment. However, the "parsimony provision" requires District Courts to impose the minimum punishment needed to satisfy the purposes of sentencing: just punishment, deterrence, protection of the public and rehabilitation of the defendant. *See, U.S. v. Santoya*, 493 F.Supp.2d 1075 (ED Wisc. 2007).

Punishment should not be more severe than that necessary to satisfy the goals of punishment. *U.S. v. Carvajal*, 2005 WL 476125 (S.D.N.Y 2005). A judge must sentence "without ever being indifferent to defendant's plea for compassion, for compassion also is a component of justice." *U.S. v. Kloda*, 133 F.Supp.2d 345

(S.D.N.Y. 2001).

The sentence must afford adequate deterrence to criminal conduct. "Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to reoffend." *U.S. v. Qualls*, 373 F.Supp.2d 873, 877 (E.D. Wisc. 2005).

Unlike long-term detained persons, newly incarcerated persons need to adapt to an environment with which they lack previous experience. In a very short lapse of time, they need to cope with confinement and pervasive deprivation (loss of liberty, of autonomy, of goods and services). Dealing with social disapproval, feelings of guilt and shame, separation from family and friends and violence among detained persons may be additional stressors for this group. During the first weeks of detention, there is an exacerbation of anxiety and feelings of hopelessness, loneliness, and loss. *Prison Policy Initiative, Research Roundup: Incarceration can cause lasting damage to mental health May 13, 2021*

According to the Report of the United State Supreme Court (USSC - May 2004) *Recidivism and the 'First Offender'*, "[t]he analysis [of empirical data on re-offending] delineates recidivism risk for offenders with minimal prior criminal history and shows that the risk is lowest for offenders with the least experience in the criminal

7

justice system.

Incarcerating youth undermines public safety, damages young people's physical and mental health, impedes their educational and career success, and often exposes them to abuse.

Scientists have confirmed that the brain does not fully mature until age 25, and this lack of brain maturity makes lawbreaking and other risky behaviors more common during adolescence.  New research also makes increasingly clear that young people's ability to desist from delinquent behavior is tied to their progress in developing "psychosocial maturity," including the abilities to control impulses, delay gratification, weigh the consequences of their actions, consider other people's perspectives, and resist peer pressure. Research finds that incarceration slows young people's psychological maturation – exactly the opposite of what's needed to foster positive behavior change and promote desistance from delinquency. Youth incarceration is a failed strategy for rehabilitating young people and protecting the public. *The Sentencing Project: Why Youth Incarceration Fails: An Updated Review of the Evidence, Richard Mendel, March 1, 2023.*

Incarceration can trigger or worsen symptoms of depression, anxiety, and PTSD. Being stripped of personal agency and exposed to violence often forces young people into constant "fight or flight" coping mechanisms.  Incarceration

is linked to mood disorders including major depressive disorder and bipolar disorder. "The prison environment is almost diabolically conceived to force the offender to experience the pangs of what many psychiatrists would describe as mental illness." Many incarcerated people have limited access to education, job training, and other programming that can fill their time and become a meaningful part of their lives. Psychological research that shows meaninglessness and a lack of purpose can lead to symptoms of anxiety, depression, and hopelessness. Time spent in prisons and jails can create a host of collateral consequences that haunt individuals even after release. As the research shows, incarceration can trigger and worsen symptoms of mental illness — and those effects can last long after someone leaves the prison gates. *Prison Policy Initiative, Research Roundup: Incarceration can cause lasting damage to mental health May 13, 2021*

Mercy and compassion are a part of justice. "A country which is secure in its institutions, confident in its laws should not be ashamed of the concept of mercy," Justice Kennedy ABA speech 2003. Punishment should not be more severe than that necessary to satisfy the goals of punishment. *U.S. v. Carvajal*, 2005 WL 476125 (S.D.N.Y 2005).

Mr. Justice was 19 years old when he committed these offenses. His ability to comprehend his actions, let alone their consequences, was severely diminished by his

lack of brain development.  It is not a question of intelligence but more an issue of understanding.  Putting him in an environment that limits his brain growth and exposes him mental trauma will severely undermine the concept of rehabilitation.

### THE KINDS OF SENTENCES AVAILABLE, 18 U.S.C §3553(a)(3)

The sentencing range in this matter puts the Defendant at a maximum of ten (10) years, notwithstanding, his total offense level of 13, with a guideline imprisonment range of 12 months to 18 months.  The Court has the option of sentencing the Defendant to a minimum term of imprisonment or can sentence of imprisonment that includes a term of community confinement or home detention. The undersigned counsel would submit that in its discretion, this Honorable Court is not precluded from sentencing the defendant to a term of probation.  That is particularly why the Supreme Court's decision in *United States v. Booker*, 125 S.Ct. 738 (2005) and those factors enumerated in 18 U.S.C. 3553(a) are extremely important.  **"Even when a traditional departure is not justified, a non-guideline sentence can be appropriate 'because the Guidelines sentence itself fails properly to reflect §3553(a) considerations, or perhaps because the case warrants a different sentence regardless.'"** *Rita v. United States*, 127 S.Ct. 2456 (June 21, 2007).

## ANY PERTINENT [SENTENCING COMMISSION] POLICY STATEMENT, 18 U.S.C §3553(a)(5)

U.S.S.G. §5H1.6, entitled Family Ties and Responsibilities, and Community Ties, comments that among permissible justifications for a downward departure is the need, given the appropriate circumstances, to reduce the destructive effects that incarceration of a defendant may have on innocent third parties. *See, U.S. vs. Nolecasty*, 65 F. 3d 4 (2d Cir. 1995); *see also, U.S. v. DeRoover,* 36 F.Supp.2d 531, 532-33 (EDNY 1999) (stating, "the unique dependence of children on the defendant is a basis for a downward departure); *U.S. v. Hammond,* 37 F.Supp.2d 204 (EDNY 1999)(stating, "a sentence without a downward departure would contribute to the needless suffering of young, innocent children"); and *U.S. v. Chambers,* 883 F.Supp. 12, 14 (D.D.C 1995) (stating, "children need supportive and loving parents to avoid the perils of life is without question.")

Mr. Orlando has a loving and supportive family who have shared this experience with him; the emotional impact that this situation has had on them is truly unmeasurable.

U.S.S.G. §5K2.20 entitled Aberrant Behavior, which allows Court to depart downward only if the defendant committed a single criminal occurrence or single criminal transaction that 1) was committed without significant planning, 2) was of limited duration, and 3) represents a marked deviation from an otherwise law-abiding

life.

Mr. Orlando's juvenile history is not representative of an otherwise law-abiding life. These crimes did not take significant planning and were limited to firearm frames. Additionally, Mr. Orlando is responsible for eight (8) of the thirty-seven (37) frames purchased by Mr. Fray, none of which are linked to any criminal activity[2].

## CONCLUSION

The sentencing range in this matter is a maximum of four (4) years. Given the vast amount of post-*Booker* case law, the Defendant would submit that this Court has the authority, discretion, and the inherent ability to sentence him below the Advisory Guideline range. "Under the Advisory Guidelines, a sentencing court is free to consider any fact relevant to § 3553(a). A Court is not barred by the fact that a particular factor is discouraged or even forbidden by the Guidelines." *See*, *U.S. vs. Zavala*, 443 F. 3d 1165 (9th Cir. 2006). Moreover, no special weight is to be given to the Advisory Guidelines as opposed to the other factors mentioned in the above-referenced statute. While a District Court "must properly use the guideline calculation as advisory and start there, they must not accord it greater weight than any of the Section 3553 factors. The court must consider all information before as done formerly and then reach the correct sentence under all circumstances." *Zavala*, rehearing en banc granted by *U.S. vs. Carty*, 462 F. 3d 1066 (9th Cir. 2006).

12

For all the above-referenced reasons, Mr. Justice Orlando would respectfully request he be granted a variance from the applicable Advisory Guideline Sentence.

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished, by Electronic Transmission via CM/ECF to SHANNON O'SHEA DARSCH, Assistant United States Attorney, Office of the United States Attorney, 500 S. Australian Ave, Suite 400, West Palm Beach, FL 33401, this 21st day of July 2026.

Respectfully Submitted,

LAW OFFICES OF FLYNN P.  BERTISCH, P.A.
2465 Mercer Ave, Suite 307
West Palm Beach, Florida 33401
Telephone: (561) 619-7346
Facsimile: (561) 619-7347
flynn@bertischlaw.com; jamie@bertischlaw.com

  /s/Flynn P. Bertisch_____
FLYNN P. BERTISCH, Fla. Bar #0605808

---

22 Mr. Orlando is also responsible for a Glock switch found during the search of his home which totals nine (9).